**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CASE NO. 16-CR-00153-002 (BAH)** |
| **ANTOINE ROBINSON** | |
| **Defendant** | |

## GOVERNMENT'S OPPOSITION TO MOTION TO REDUCE SENTENCE

Defendant Antoine Robinson ("Defendant") is currently serving a 50 month term of imprisonment after pleading guilty to charges related to a multi-million dollar tax fraud scheme. Defendant seeks to be released, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), often referred to as "compassionate release," citing his history of good behavior over the nearly four months he has been imprisoned, along with the COVID-19 pandemic. Mot. at 11-13. The United States respectfully opposes his motion. Defendant's professed general good behavior over his very short period of incarceration (i.e., approximately four months out of a 50 month sentence) does not provide him with an adequate basis for early release. Furthermore, Defendant's claim that he suffers from diabetes and high blood pressure are contradicted by the evidence. Moreover, granting Defendant's request for early release would result in Defendant serving less than 10% of the period of incarceration imposed by this Court, which is inconsistent with the principles of justice contained in 18 U.S.C. § 3553(a) and the intent of the First Step Act.

### FACTUAL AND PROCEDURAL BACKGROUND

This case is one of more than three dozen cases filed against members of an extensive network of over 130 individuals, many of whom were receiving some type of public assistance, who engaged in a massive sophisticated identity theft and false tax refund scheme in the District of Columbia and elsewhere. That scheme sought over $42 million in fraudulently claimed income

tax refunds.  During the approximate period of 2006 through 2016 (for tax years 2005 through 2012), the co-conspirators caused the filing of at least 12,000 fraudulent federal income tax returns listing one of over 400 addresses located in the District of Columbia, Maryland, and Virginia as the "taxpayer" address.  Some of the addresses were used to file more than 100 fraudulent federal income tax returns in a single year.

From in or about September 2008, and continuing until in or about November 2013, Defendant, co-conspirator Donnell Clayton Jr. ("Clayton"), and others, obtained and used the means of identification of individuals, including their names and Social Security numbers, to prepare and file false federal income tax returns with the IRS.  Clayton directed the tax refunds to be delivered via the U.S. Postal Service to residential addresses controlled by him, co-conspirator Robinson, and other individuals.  Clayton and Defendant then caused the checks to be cashed or deposited into bank accounts they controlled.   During the timeframe in question, Clayton, Defendant, and other individuals, whose identities are known and unknown, received 1,173 fraudulent tax refund checks, totaling approximately $3,887,271.06.  It is unclear how much Defendant actually profited from this scheme, but it was clearly less than the total loss amount for the entire conspiracy (which involved numerous co-conspirators through Washington, D.C.).

Defendant played a critical role in the scheme.  Defendant is Clayton's uncle and received checks, subsequently negotiated (i.e., cashed) those checks, and recruited others to receive and negotiate checks.  Defendant recruited Robert Upchurch, a U.S. Postal Service letter carrier, to permit the use of addresses on his mail route to receive U.S. Treasury checks and to divert the checks from his mail route to Defendant in exchange for money.  Defendant paid Upchurch $100 to $200 per refund check.  In sum, 402 checks totaling approximately $1.6 million were sent to addresses on Upchurch's route.  Of those, 362 checks were negotiated, causing an actual loss to

the U.S. Treasury of $1,270,918.20.   Defendant also received a substantial number of U.S. Treasury checks at addresses where he lived or with which he was closely associated.   Defendant received $250 to $500 per check cashed, with the rest of the money going to Clayton, the person who provided their identification, the individual who cashed the check, etc.

To complete the scheme, the co-conspirators needed an insider at a bank or check cashing establishment to cash the checks because the co-conspirators could not cash the checks using their own accounts.   During Defendant's commission of the scheme, he and Clayton recruited Aisha Mayo ("Mayo"), who was a Wells Fargo bank teller, to negotiate checks.   Defendant paid Mayo $200 to $300 per check cashed.   In total, Mayo deposited 40 checks for Defendant between October 2011 and February 2012, causing a loss of approximately $140,000 to the U.S. Treasury. Defendant also recruited Ja'Ka McKnight ("McKnight"), who was an ACE Check Cashing teller, to negotiate U.S. Treasury checks.   Defendant provided McKnight with a "burner" phone and would call her every time he had checks to cash.   He paid her $250 to $300 per check.

On May 5, 2019, Defendant pled guilty to a three count Superseding Information charging him with Conspiracy to Commit Theft of Public Money, in violation of 18 U.S.C. 371, Theft of Public Money and Aiding and Abetting and Causing an Act to be Done, in violation of 18 U.S.C. §§ 641 and 2, and Fraud and Related Activity in Connection with Identification Information and Aiding and Abetting and Causing an Act to be Done, in violation of 18 U.S.C. §§ 1028(a)(7) and 2.

On December 13, 2019, Senior Judge Rosemary Collyer sentenced Defendant to 50 months incarceration on all counts, to run concurrently, followed by 36 months of Supervised Release.   As part of Defendant's sentence, Judge Collyer ordered him to pay restitution in the amount of

$3,071,502.99, jointly and severally with his co-defendants.  Defendant entered BOP custody on February 18, 2020, and is housed at Allenwood Federal Correction Institute ("FCI").

## ARGUMENT

### I.    Legal Standard

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception empowers the Bureau of Prisons Director to "petition the court for a reduction in … sentence" and provides the Court with the authority to grant that petition if it finds that the reduction is justified by "extraordinary and compelling reasons."  18 U.S.C. § 3582(c)(1)(A)(i).  As amended by the First Step Act of 2018, the exception in Section 3582(c)(1)(A) is expanded to authorize a defendant to file a motion for such compassionate release directly with the court after exhausting "administrative rights to appeal a failure of the Bureau of Prisons to bring a [compassionate release] motion" on his behalf or if he waits at least "30 days" after he delivers his request for compassionate release to "the warden of [his facility]."  18 U.S.C. § 3582(c)(1)(A).[1]

In resolving motions for compassionate release, the Court may reduce a term of imprisonment only "after considering the factors set forth in [18 U.S.C.] 3553(a) to the extent that they are applicable," *id*., and upon making two findings: first, that "extraordinary and compelling reasons warrant such a reduction," *id*. § 3582(c)(1)(A)(i); and, second, "that such a reduction is

---

[1] The government obtained records from the BOP showing that Defendant submitted his request for a reduction of sentence on May 14, 2020, and that the Warden at Allenwood FCI rejected that request on May 22, 2020.  Therefore, the government agrees that Defendant exhausted his administrative remedies as required under 18 U.S.C. § 3582(c)(1)(A) prior to submitting the instant motion.

consistent with applicable policy statements issued by the Sentencing Commission," *id*. § 3582(c)(1)(A).

In a matter similar to the instant on, this Court described the Sentencing Commission's policy statement as follows:

> The Sentencing Commission's policy statement at U.S.S.G. § 1B1.13, which was last substantively amended on November 1, 2016, applies to motions for reduction of terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A), and provides guidance as to both of the statutorily required findings. It states that a reduction of a term of imprisonment may be warranted, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," when the court makes three determinations: (1) "extraordinary and compelling reasons warrant the reduction," or the defendant meets certain age and a minimum incarceration period, U.S.S.G. § 1B1.13(1)(A)–(B); (2) the defendant poses no danger to the safety of any other person or the community, *id*. § 1B1.13(2); and (3) "the reduction is consistent with this policy statement," *id*. § 1B1.13(3). The commentary to this policy statement then describes four "circumstances" that satisfy "extraordinary and compelling reasons warrant[ing] the reduction": (1) the medical condition of the defendant, who "is suffering from a terminal illness" or has chronic and "substantially diminish[ed] ... ability ... to provide self-care" within the prison environment, *id*. § 1B1.13, cmt. n.1(A); (2) the defendant is at least 65 years old, with a serious deterioration in physical or mental health, after serving at least 10 years or 75 percent of the prison term, "whichever is less," *id*. § 1B1.13, cmt. n.1(B); (3) "[f]amily [c]ircumstances" of "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or the incapacitation of the defendant's spouse or registered partner "when the defendant would be the only available caregiver for the spouse or registered partner," *id*. § 1B1.13, cmt. n.1(C); and (4) "[o]ther [r]easons" found by the BOP Director to present an extraordinary and compelling reason "other than, or in combination with," the reasons specified in the policy statement, *id*. § 1B1.13, cmt. n.1(D).

*United States v. Curtis*, Crim. No. 03-533 (BAH), 2020 WL 1935543, at *3 (D.D.C. April 22, 2020).

## II.   Robinson Has Not Identified "Extraordinary and Compelling Reasons" for a Sentence Reduction

Robinson's request for a sentence reduction should be denied because he has not demonstrated "extraordinary and compelling reasons" warranting release.  As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it

determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

### a. Reduction Based on Personal and Family Circumstances

The Defendant seeks to reduce his sentence because, while incarcerated over the past few months, he has "received his certification as a Flagger under P.D.O.T." and "has completed several additional programs." Def. Mot. at 11. He also basis his request on that fact that he "re-found religion while in custody," and that his incarceration has caused him to have "missed parts of his children's lives." *Id*. The Defendant also states that "[h]e would like the opportunity to be there for his daughter and be part of this small milestone in her life after he has missed so many others." *Id*.

At the outset, the government notes that Judge Collyer sentenced the Defendant to incarceration only *seven* months ago, and the Defendant has spent only approximately *four* months incarcerated. That said, "the Sentencing Commission's applicable policy statement makes clear that 'rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason warranting a sentencing reduction." U.S.S.G. § 1B1.13, cmt. N. (citing 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for sentence modification under § 3582(c)(1)(A))). *See, e.g., United States v. Goldberg*, Crim No, 12-180 (BAH), 2020 WL 1853298, at * (D.D.C. April 13, 2020) (denying motion for sentencing reduction where defendant's only professed reason for the reduction was "how own personal reformation, including his religious conversion to Judaism, and his family circumstances due to the declining health of his elderly parents"). As such, the Defendant's request for a sentencing reduction based on his behavior while incarcerated, and his professed desire to spend

more time with his children, should be given little to no weight when assessing whether he has shown "extraordinary and compelling reasons" warranting compassionate release.

### b. Defendant Failed to Make the Showing Necessary for Compassionate Release Based on Any Medical Condition

Defendant next moves to reduce his sentence based on medical reasons, claiming that he "is at significant risk [of contracting COVID-19 in prison] because he is a type II diabetic with high blood pressure." Def. Mot. at 11. Defendant also claims that he "is particularly at risk for infection and serious illness" because "people who suffer from, inter alia, high blood pressure, diabetic and male African-American are at a higher risk of getting very sick from this illness." *Id*. (internal quotations and citation omitted). Defendant's claims should be rejected as they are belied by the evidence in the government's possession.

First, Defendant's claims regarding his medical condition are completely at odds with what he told his Presentence Report ("PSR") writer on July 30, 2019 in the instant matter. According to the PSR report: "The defendant stated he is in good physical health and is not taking prescription medications. He is allergic to seafood. Ms. Dowdy advised Mr. Robinson is in good physical health." PSR ¶ 117. No mention was made whatsoever of the Defendant having high blood pressure or diabetes.

Second, the government has obtained Defendant's medical records from the Bureau of Prisons. *See* Exhibit A (Medical Records from BOP).[2] According to those records, the Defendant met with medical professionals at Allenwood FCI on February 18, 2020, *see* Exhibit A p. 10, and on March 2, 2020, *see* Exhibit A p. 15. On both occasions, the Defendant denied having diabetes

---

[2] The government will be filing a separate motion to file Exhibit A under seal due to the sensitive medical and health information contained therein.

and hypertension.  Furthermore, the Defendant's medical records show absolutely no diagnosis or medication prescribed for diabetes or high blood pressure.  *See, generally*, Exhibit A.[3]

Moreover, Defendant's claims regarding his blood pressure and diabetes, even if true, fall well short of warranting a sentencing reduction in this case.  As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. USSG § 1B1.13, cmt. n.1(A).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement.  Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13, cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion must be denied.

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction.  The categories encompass specific serious medical

---

[3] Furthermore, in the Defendant's request for early release, which he submitted to the Warden at Allenwood FCI on May 12, 2020, he does not state that he is seeking such release based on diabetes or hypertension.  *See* Exhibit B, p. 2.

conditions afflicting an individual inmate, not generalized threats to the entire population.  As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020);; *see also United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").[4]  To classify COVID-19 as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

For these reasons, the Defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(c). The motion should be denied.

---

[4] *See also, e.g.*, *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); *United States v. Okpala*, 2020 WL 1864889 (E.D.N.Y. Apr. 14, 2020); *United States v. Weeks*, 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old with no other conditions); *United States v. Pinto-Thomaz*, 2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020) (two insider trading defendants with less than a year to serve have no risk factors); *United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."); *United States v. Carver*, 2020 WL 1892340 (E.D. Wash. Apr. 8, 2020).

### c.   The §3553(A) Factors Support Judge Collyer's Sentence

Pursuant to 18 U.S.C § 3582(c)(1)(A), when considering a motion for compassionate release, the Court must take into account the factors outlines in § 3553(a).  *See United States v. Davis*, No. 2:00-CR-424-PJM, 2020 U.S. Dist. Lexis 40652, at *9 (D. Md. Mar. 5, 2020).  There are no limits on "the information concerning the background, character, and conduct" of a convicted defendant that the district court may consider in determining an appropriate sentence. 18 U.S.C. § 3661.  The § 3553(a) factors weigh heavily against Defendant's sentence being reduced, including the following factors: 1) the nature and circumstances of the offense and history and characteristics of the defendant; 2) the need for the sentence of the offense to promote respect for the law and provide just punishment; and 3) the need of the sentence to afford adequate deterrence to criminal conduct; and 4) the need to protect the public from further crimes of the defendant.  18 U.S.C. §§ 3553(a)(1), (a)(2)(A) – (C).

On December 19, 2019, Judge Collyer applied the § 3553(a) factors at the Defendant's sentencing hearing and, along with departing downward pursuant to § 5K1.1, determined that a sentence of 50 months, followed by 36 months of supervised release, was reasonable.  Since that time, these factors have not materially changed.  In addressing the considerations under § 3553(a) in response to the present Motion, the United States rests on its prior Sentencing Memorandum filed in this matter.

The Defendant's motion is essentially a request that this Court commute approximately 90% of Defendant's 50-month sentence.  That a defendant who has served 10% of his adjudged prison sentence should be released from custody, after presenting no evidence of suffering from any ailment that would increase their chances of contracting COVID-19, would be a miscarriage of justice.  Erasing the wholly justified 50-month sentence would absolve Defendant of real

punishment for his wrongdoing and contravene the need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C § 3553(a)(a)(A).  It would allow him to avoid any meaningful consequences for the theft scheme of which he was convicted of engaging and fall far short of reflecting the seriousness of his crimes.  Indeed, the seriousness of Defendant's offense and the need for deterrence have not changed with the spread of COVID-19.  District courts regularly decline to grant compassionate release where inmates have served such a small portion of the imposed sentence.  *See, e.g.*, *United States v. Daugerdas*, 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (explaining that reducing a sentence when the defendant had only served 37% of the sentence would "do little to 'promote respect for the law' or 'provide just punishment for the offense'" (quoting 18 U.S.C. § 3553(a)(2)(A));  *United States v. Walter*, 2020 WL 1892063, *3 (S.D.N.Y. Apr. 16, 2020) ("Converting [the defendant's] sentence to one of home confinement, when he has served just 17 months of a 62-month term of incarceration, would disserve the[ ] . . . § 3553(a) factors.");  *United States v. Moskop*, 2020 WL 1862636, at *2 (S.D. Ill. Apr. 14, 2020) (determining that "consideration of the § 3553(a) factors counsel against . . . release" where a defendant with various acute and chronic medical conditions had served approximately 8 years of a 20-year sentence);  *United States v. Mollica*, 2020 WL 1914956, at *5 (N.D. Ala. Apr. 20, 2020) (noting that the defendant had "served *less than a third* of the sentence that the court imposed after consideration of the § 3553(a) factors" and concluding that "[a] reduction of her sentence to time served would be a drastic measure not merited in this case" (emphasis in original)).

## **CONCLUSION**

For the reasons detailed above, the United States respectfully requests that the Court deny Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney
District of Columbia
D.C. Bar No. 4444188

By: _____/s/_____
MICHAEL J. MARANDO
N.Y. Bar. No. 4250395
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7068
Michael.Marando@usdoj.gov